*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2036**

State of Minnesota,
Respondent,

vs.

Andrew John Kramer,
Appellant.

**Filed December 27, 2016
Affirmed
Connolly, Judge**

Steele County District Court
File No. 74-CR-15-914

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota; and

Daniel A. McIntosh, Steele County Attorney, Owatonna, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Connolly, Presiding Judge; Bjorkman, Judge; and Reilly, Judge.

**CONNOLLY**, Judge

Appellant challenges his conviction of second-degree assault after a court trial, arguing that the district court erred by using facts not in the record when it determined that appellant knew that parks are closed in the middle of the night, by not ordering a Rule 20.01 competency evaluation of appellant done, and by not redacting, sua sponte, portions of appellant's statements to the police. Because we see no error, we affirm.

## FACTS

On April 30, 2015, about 3:00 a.m., while J.W. and two others were asleep in J.W.'s apartment, appellant Andrew John Kramer stood outside and yelled that J.W. should come out. When J.W. responded by closing the window, appellant threw a rock through it. J.W. and the two others then went outside, and appellant stabbed J.W. in the lower back with a sharp knife. The police were called; J.W. was taken to the hospital, then air lifted to a trauma unit.

The police went to appellant's apartment and interviewed him. Appellant denied stabbing J.W. or being at the scene. He was arrested and taken to jail, where he again denied the stabbing, but his statement in jail contradicted the statement he had made to the police in his apartment. Appellant's statements to the police included racist remarks, references to his previous encounters with the criminal justice system, and references to being attacked in the park where he had left his hat and sunglasses. Police officers later found appellant's hat and sunglasses at the scene of the stabbing.

Appellant was charged with second-degree assault. At a contested omnibus hearing, appellant's attorney requested that appellant's competency be evaluated under Minn. R. Crim. P. 20.01. Appellant declined the evaluation and asked to proceed with his court trial.[1]

During that trial, a witness and J.W. testified that appellant had stabbed J.W. The district court heard unredacted versions of appellant's statements to the police made in his apartment and at jail. When the district court made the findings of guilty on the record, it noted that appellant said at one point that he had been in the park, although appellant knew the parks were closed at three in the morning, and that the contradictions within and between appellant's statements affected appellant's credibility.

The district court found appellant guilty as charged and sentenced him to 27 months in prison. He challenges his conviction, arguing that: (1) the district court's statement that appellant knew parks are closed in the middle of the night deprived appellant of a fair trial before an impartial factfinder and violated the Code of Judicial Conduct; (2) the district court erred by not having a Rule 20.01 competency evaluation of appellant done; and (3) the district court erred by not redacting, sua sponte, portions of appellant's statements to the police as unfairly prejudicial.

## D E C I S I O N

**1.     The District Court's Statement**

Appellant said to the officers who came to his apartment after the stabbing:

---

[1] The trial was held before Judge Karen Duncan, referred to hereinafter as "she"; Judge Gerald Wolf presided at the sentencing hearing.

I went to Kwik Trip down by Dartt's [Park] to go buy a candy bar [and] something to drink, minding my own business . . . I get out of Kwik Trip, I cross the street go through the trail at Dartt's . . . and somebody came up from behind and started beating me up. . . .

. . . .

I lost it all [his hat and sunglasses] when they came at me. They came at me from behind. They hit me in the head, the back, the shoulder. I hit the ground and I was kinda down like this a little bit . . . .

. . . .

I didn't even plan to go to a house. I actually was just going to Kwik Trip for a nice walk to come home, spend some time with my girlfriend upstairs, 'cause she just . . . rented a movie, or borrowed a movie from her mom.

. . . .

I know . . . I got hit at least 3 times. I got hit once in the head for sure, but they, they kind of did a few more hits in the back, so I'm guessing maybe 2 or 3.

. . . .

I went to the store to go get something to drink and a candy bar to munch on and, I get beat up . . . on the way to [the store] . . . I didn't make it that far . . . .

At the jail, appellant said to the police officers:

I walked to Kwik Trip, and I went the long way, cause, like I said, it's nice out. I was just enjoying the weather, la da da, the next thing you know I don't even get to Kwik Trip. I get jumped in Dartt's.

. . . .

I went through the Cedar, Elm Street area. I kind of zig zagged back and forth. No, actually I went straight through Central Park. I remember exactly what I did now.

. . . .

Yeah, I walked straight through downtown. I remember now.

In announcing its finding of fact, the district court stated:

[Y]ou [appellant] had told the officers [who came to your apartment] that you had gone to the Kwik-Trip by the park and actually gone in and gotten something to drink and a candy bar. That changed as you continued to talk to the statement that you

4

hadn't actually made it into that Kwik-Trip.  So that was kind of one example of you . . . taking information that you knew, and then trying to weave things into a story that would provide you with a good alibi for this crime, such as being jumped in the park.  And the fact that you didn't have any purchase from Kwik-Trip, I believe, lead you to chang[e] your story from the fact that you'd been inside Kwik-Trip to make your purchases to [say that] you hadn't made it that far at the time you got jumped.

Your route for going through the park *when you know that the parks . . . are closed at that time of the morning* [3:00] also affected the credibility of your statements.  The fact that you would take the route to go through the park when your plan was to go home and watch a movie with your girlfriend didn't seem to make a lot of sense.  And also your report of the jumping incident where at one point you'd indicated that you'd been knocked down . . . but then it appeared that as you realized that the officers were checking you for injuries and you didn't have injuries or dirt on you . . . you then changed the story and said in fact you hadn't been knocked to the ground . . . you'd been moved forward . . . by being struck from behind.

(Emphasis added).  Appellant argues that the italicized phrase both deprived him of a fair trial and violated the Code of Judicial Conduct.

For this argument, appellant relies on *State v. Dorsey*, 701 N.W.2d 238 (Minn. 2005).  But appellant's reliance is misplaced.  In *Dorsey*,

the [district court] judge, after openly questioning the veracity of a factual assertion made by a key defense witness, independently investigated that fact and then reported the results of her investigation to counsel. . . .We conclude that [the defendant] was deprived of the basic protection of an impartial judge and finder of fact. . . .

*Id*. at 253 (quotation marks omitted).  Here, the district court conducted no investigation either as to when parks are open or as to appellant's knowledge of when parks are open.

5

Appellant provides no other support for his view that the district court was not impartial, and the record reveals none.

Appellant also argues that the district court was impartial because she "introduced into the proceedings *a material fact* that was favorable to the state—and which the state had not yet introduced." *Id.* at 251 (emphasis added). But appellant does not explain why either the closing time of a park where he claimed to have been at the time of the stabbing and to have left the hat and glasses, or his knowledge of the park's closing time, could have been a material fact in the trial of appellant for a stabbing that did not occur in the park, when his hat and glasses were found at the scene of the stabbing, and both a witness and the victim, J.W., testified that appellant had done the stabbing.

The judge provided several reasons for her determination that appellant's account of having been attacked while walking through a park about 3:00 that morning was not credible. The judge had heard statements from a witness and the victim that appellant had been at the victim's address and had stabbed the victim at the time appellant said he was in the park and was attacked. The judge had also heard appellant's statements to the police in which he had given inconsistent accounts of where he had been and what had happened at that time. Moreover, whether appellant knew or did not know the park was closed, and whether the park was in fact closed or not closed, had no connection with the crime with which appellant was charged or with the judge's impartiality towards appellant.

*Dorsey* also fails to support appellant's argument that the reference to the closing time of Owatonna parks violated the Code of Judicial Conduct. In *Dorsey*, a judge who had independently investigated a witness's factual assertion and reported the results of the

investigation was found not to have violated the Code. *Id.* at 249. Here, there is no conduct supporting a violation.

The district court's statement neither deprived appellant of a fair trial nor violated the Code.

## 2. Rule 20.01 Competency Evaluation

Appellant argues that the district court erred and ignored the plain language of Minn. R. Crim P. 20.01 by disregarding appellant's attorney's request to have appellant's competency evaluated and granting appellant's request to proceed to trial. Appellate courts review competency determinations on undisputed facts "to determine whether the district court gave proper weight" to the evidence suggesting incompetence in the record. *State v. Camacho*, 561 N.W.2d 160, 174 (Minn. 1997).

At the omnibus hearing, appellant's counsel noted that appellant had difficulty understanding that hearsay could be used to find probable cause on a complaint and asked that appellant's competency be evaluated under Minn. R. Crim. P. 20.01 to see if he would be able to assist in preparing his own defense. The district court asked appellant if he wanted to have an evaluation. Appellant replied that he had been mistreated since the beginning of the case and that he "had yet to see a reason why [he] should be sitting in jail while the other person [i.e., the victim] walks away free due to the statements made" that, in appellant's view, were not reliable.

The district court asked appellant if he thought he could work with his attorney to decide if he wanted to call witnesses at trial. Appellant answered, "I have no witnesses.

7

My statement is clear. I was alone" and objected that the victim, who appellant claimed was admitting to a felony, was at home free of prosecution or charges.

The district court noted that appellant and his attorney were talking about two different things: while the attorney was talking about a competency evaluation, appellant was talking about the resolution of his case. The district court asked appellant, "And do you feel you should be taking medications?" to which appellant answered, "I feel I should be able to go home . . . [b]ecause hearsay is not enough to hold me when you got two people with two different stories and one of them is giving three or four different stories to several different people and it's on record."

The district court said it did not want to send appellant to St. Peter for an inpatient evaluation if he did not feel it was necessary and told him that an evaluation would delay his trial two or more months. Appellant responded, "Then my speedy trial would be thrown out the window?" The district court told appellant that what he had been saying indicated that he was "very aware of what the issues are" and that, if appellant was sufficiently aware of the issues, they could have the trial as scheduled after the court had determined whether there was probable cause. Appellant then spoke to his attorney, who told the district court, "[I]n terms of the request for a Rule 20 [evaluation], it doesn't sound to me from [appellant] that he wants to get an evaluation[,] . . . and I just want to make it very clear that's against the advice of Counsel."

Nothing in the omnibus-hearing transcript indicates that appellant was not competent to understand the issues or to participate in his trial. He was very clear in stating that there were no witnesses, in accord with his alibi that he was attacked while alone in a

8

park at the time the stabbing occurred. He reiterated his desire for a determination of probable cause and for a speedy trial, and he consistently opposed his attorney's view that he should have a Rule 20 evaluation. A defendant is competent if he is able "to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings against him." *Id*. at 171 (quotations omitted). Appellant met that standard. The district court did not err in granting his request to move forward with the trial rather than delay it for a competency evaluation.

### 3. Unredacted Statements

Appellant's statements to the police, made first in his apartment, then in jail, contained racist remarks and references to his previous encounters with the criminal justice system. He did not object to the introduction of the statements at trial, but now argues that the district court should have redacted the racist remarks sua sponte and that the references to appellant's previous crimes were improperly admitted *Spreigl e*vidence. Because no objection was made at trial, appellant must show that the admission of the remarks and the references to past involvement with police and the criminal justice system was error that was plain, i.e., clear and obvious, and that affected substantial rights. *See State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If appellant makes this showing, the error will be corrected only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *See State v. Benton*, 858 N.W.2d 535, 540 (Minn. 2015).

But appellant's statements were not admitted as *Spreigl* evidence: they were admitted to show that appellant had provided conflicting accounts of his activities at the time the stabbing occurred. Appellant argues that evidence of "[his] past assaults, prior

9

use of drugs, and poor relationship with the police [was] irrelevant to the current charge." But the admission of that evidence did not violate Minn. R. Evid. 404 (a) (prohibiting character evidence introduced for the purpose of proving conformity therewith on a particular occasion), and none of that evidence had any relationship or similarity to the crime with which appellant was charged. The evidence did show that appellant changed his story while speaking to the police, that appellant had a motive to assault J.W., and that appellant's hat and gloves were not where he said he had lost them, i.e., in the park, but rather outside J.W.'s residence, where the stabbing occurred and where appellant denied having been.

Moreover, at a court trial, the risk that appellant's references to previous altercations with the police would have prejudiced the factfinder or affected the verdict was significantly diminished. *See State v. Burrell*, 772 N.W.2d 459, 467 (Minn. 2009) ("[T]he risk of unfair prejudice [from evidence of prior gang shootings] in the context of a bench trial is . . . small.") Appellant cites no statute or caselaw to support his implied view that a district court judge has an obligation to redact from statements submitted at a court trial all references to previous encounters with police or illegal activities.

Finally, appellant's statements were not used for any improper purpose. Appellant claims that they contained "strictly propensity evidence" and relies on *State v. White*, 295 Minn. 217, 226, 203 N.W.2d 852, 858-59 (1973) to argue that "introduction of [a] defendant's criminal record . . . by *testimony not impeaching the credibility of defendant as a witness* . . . would [not] beyond a reasonable doubt constitute harmless error." (Emphasis added). This evidence was presented to impeach the credibility of a witness,

namely appellant: Both the internal inconsistencies in the statements themselves and the fact that both the victim and a witness testified that appellant did the stabbing corroborated the finding that appellant's account of being attacked in the park when the stabbing occurred was not credible. Moreover, the statements did not concern any prior stabbings and therefore did not show any propensity for this particular crime.

The district court did not commit clear error by not sua sponte redacting appellant's statements prior to the court trial, and we see no error in not ordering a competency evaluation or in observing that appellant knew when the parks were closed.

**Affirmed.**